By the Court.
Duer, J.
It may be true, as Mr. Justice Story has suggested, that some exceptions from the equitable doctrine upon which this defence is rested, ought to be admitted ; but the doctrine, as supplying a general rule, has been too firmly established by repeated decisions to be now shaken; nor is it pretended that there are any circumstances in the present case that can lay a ground for an exception. The doctrine is, that when a mortgagor sells a portion of the lands which the *571 mortgage covers, those which he retains become primarily liable for the satisfaction of the debt, those which he has conveyed being answerable only for an eventual deficiency;. and, as a necessary consequence, that a similar equity prevails between purchasers, so that distinct parcels or lots of the mortgaged lands, which have been conveyed at different times to different purchasers, are chargeable in the inverse order of their alienation, and must be sold in that order under a decree. The equity which may thus have been created between a purchaser and the mortgagor, or between several purchasers, the mort-‘ gagee, when he has a knowledge of the facts, is not permitted to disregard or disturb, and, with this knowledge, he acts at his own peril when he releases from the lien of the mortgage any portion of the lands which it embraces. If the lands released are primarily liable, and are of sufficient value to satisfy the debt, those previously conveyed are wholly discharged, and in no case can they be charged with any larger sum than the proportion of the debt that may remain unsatisfied when the value of the lands released has been applied and exhausted.
As these rules' are undisputed, and it is admitted that the value of the lands which were released by the plaintiffs to J. Hunt, in April, 1846, exceeds the whole amount of the original debt, the only question necessary to be considered is, whether the company, at the time of the execution of the release, are chargeable with notice that the 92 acres, not released, and upon which they meant to retain their lien, had been previously conveyed. If notice cannot be justly imputed to them, their lien is retained, and they are entitled to a decree. If they are chargeable with notice, actual or constructive, their lien upon the lands thus conveyed is wholly gone, and the bill as to the defendants, now before us, must be dismissed.
The deed for the 92 acres to Gr. Wildes, from whom the other defendants derive their title, was recorded in the proper clerk’s office several years before the execution of the release ; but we agree with Chancellor Walworth, (Stuyvesant v. Hall, 2 Barb. Ch. E. 151,) that the recording of a subsequent deed from the mortgagor cannot operate, per. se, as notice to the mort *572 gagee; since, by the plain terms of the statute, the constructive notice which arises from the recording of a conveyance is limited to subsequent purchasers of the lands which it embraces. Yet the fact that this deed was recorded, is not to be regarded as wholly unimportant; since, if it shall appear from other circumstances that the plaintiffs were bound to inquire, the record of the deed is evidence that an inquiry, properly conducted, must have led to a knowledge of its existence.
Nor shall we lay much stress upon another circumstance, upon which a good deal of stress was laid in the argument, namely, that the existence of the conveyance to Wildes was ascertained in 1842, by the attorney and agent, who was then employed by the plaintiffs to foreclose the mortgage. It is true, as a general rule, that the knowledge of an agent is, by construction of law, the knowledge of his principal; but the .sole grounds of this imputation are, that it is the duty of the agent to communicate to his principal all the facts which have been ascertained by him in the course of, and relating to the subject of his agency, and this duty, when it has attached, the law presumes to have been discharged. (Story on Agency, § 160, 208.) In this case, .however, by the sudden discontinuance of the proceedings in the foreclosure suit, the agency of the attorney was terminated before his inquiries were completed, and at any rate before it was necessary for him, or it became his duty to communicate their result to the plaintiffs. As the reasons for the communication had ceased, the obligation also ceased. Hence, since the duty of communication never attached upon the attorney during the course of his agency, there is no room for the presumption that it was actually made; the ground of the presumption wholly fails; and that the communication was not in fact made, we think the evidence shows.
But there are other facts in this case of far greater significance and value than those to which we have adverted. It appears from the evidence, that Wildes took possession of the lands conveyed, by his agent or tenants, immediately, or shortly after he received the deed, and that the fact of his possession *573 was so public and notorious, that it was generally known in tbe vicinity that he was, or claimed to be the owner. When lands contracted to be sold, are in the actual possession of the vendee, his possession is notice of his equitable title to all persons, who may subsequently deal in relation to the same lands with the vendor, so that a subsequent purchaser, who has paid the full value of the lands, in total ignorance of the contract, is yet bound by its terms, and may be compelled to execute its provisions by a conveyance of the legal title which he had acquired. We are not prepared to say that this rule, which is constantly applied to a subsequent purchaser, may with equal justice be applied to a prior mortgagee. There is undoubtedly a distinction that may prevent this extended application; yet, it may deserve consideration, whether a knowledge of the actual state of the possession and of the title and claims of those holding the possession may not, even with greater reason, be imputed to the mortgagee than to the purchaser. His existing relation to the lands makes it his interest, generally speaking, to possess the knowledge, and it therefore seems a fair presumption that he has not neglected the means of acquiring it. The actual question has never been decided, nor is it necessary that it shall now be determined, since there are other grounds upon which, with more satisfaction to our own minds, and as we cannot but think, with a very slight hazard of error, we may place the judgment we intend to deliver.
The last and most material allegations on the part of the defendants are, that the plaintiffs, by the very terms of the release to Hunt, had notice that George "jYildes was then .the owner of that portion of the mortgaged premises which, with a view to retain the lien of the mortgage, was excepted from the operation of the rel'ease, and that the notice, if not direct and positive, was yet sufficient to put them upon inquiry, and by a legal consequence to charge them with a knowledge of all the facts which upon inquiry they would have ascertained. The release embraces three distinct lots or parcels of land, and in giving the boundaries of parcel No. 3, closes the description with these words, “ being part of the same premises conveyed to "William *574 Paulding, &c., by tbe said John Hunt and Mary his wife, by tbe deed bearing date tbe twenty-fifth of February last past, and are therein described as parcels 1, 3, and 4, (one, three; and four).” It was candidly admitted by tbe counsel for tbe plaintiffs that tbe necessary effect of tbis reference to tbe Paulding deed was to adopt and incorporate into tbe release tbe description which is there found, and that tbe release must therefore be construed precisely as it would have been bad tbis description, instead of being referred to, been literally transcribed.
In tbe deed to Paulding, parcel No. 1, (wbicb we have seen is included in parcel No. 3 in tbe release,) is partly described as follows: “Beginning at tbe northeasterly corner and adjoining land now or late of George Wildes,” and running thence southerly in three different cóurses along said Wildes’ land; tbe land thus described as being “now or late of G. Wildes,” being exactly that part of tbe mortgaged premises wbicb Halsey bad conveyed to him, and upon wbicb tbe sum remaining due upon tbe mortgage is now sought to be charged.
It was not denied by the counsel for tbe plaintiffs that tbis descriptive clause bad the words “ or late” been omitted, would have amounted to a positive notice to tbe plaintiffs of tbe prior title and equity of Wildes’; it would have been evidence of their actual knowledge of the facts upon wbicb bis equity and that of bis grantees depend. But it was contended that by tbe insertion of the words “ órlate,” tbe clause, as conveying notice, was rendered wholly inoperative, since these words might, with as much propriety, be referred to a time anterior to tbe execution of tbe mortgage, as to any subsequent period. In short, that tbe clause, as it stands, means only that at some period or other one George Wildes had been tbe owner of the land to which it refers. Could we assent to tbis as tbe true construction of the clause, we should still hesitate to say that tbe notice wbicb it conveyed was not sufficient to create an obligation to inquire; but we cannot think that tbe words of tbe clause ought to be thus construed; such is not their natural interpretation; nor is it the meaning, we are satisfied, wbicb they conveyed at tbe time to tbe minds of the parties. When lands are *575 described in a deed as “ now or late of A. B." tlie plain and obvious meaning is, that A. B. was the last person who was known to the parties as the owner, and that they still believed him to be so, but inserted the words “ or late,” to guard against the possible contingency of a conveyance by him to some person then unknown. It may be true that such a descriptive clause, having reference to boundaries only, and not to the lands conveyed, is not unfrequently copied from a prior conveyance, and in many such cases is not understood by the parties as a representation of existing fa-cts; still the true and primary meaning of the words is that which we have stated, and except when they are known to be a mere transcript from a prior deed, it is this meaning which they naturally, if not necessarily, suggest to the mind of a reader. The presumption, that it was in this sense that the words “ now or late” were understood and meant to be understood in this case, is greatly strengthened by the circumstance that the clause in which they are found describes the line of boundary in its continuance, “ as running along said Wildes’ land,” words so positive that it is quite improbable they would have been used, had not Hunt, whose words they are, believed that Wildes was then the owner; and it must be remembered that the plaintiffs, when they adopted the words of Hunt, were bound to consider in what sense he probably employed them.
Let it be admitted, however, that the words “ land now or late of G-. Wildes” are not equivalent to a declaration of the belief of the parties that Wildes was then the owner, it cannot be denied that they are evidence that they deemed it to be possible that he was so, and the admission of this possibility, under the circumstances of this case, was alone a sufficient notice to put the plaintiffs upon inquiry. Such a possibility could not have existed at all, Wildes could not then-have been the owner, had not the land been conveyed to some person by Halsey, the mortgagor, in the interval between the execution of the mortgage and that of the general assignment to Hunt, for had there been no such conveyance, Hunt himself, when he executed the deed to Paulding and when the release was executed, would *576 have been in the possession of the land as owner, and could therefore never have admitted the possibility of an existing title in another person.
And this circumstance, we must remark, furnishes a complete answer to the argument upon which the able counsel for the plaintiffs chiefly insisted. It is doubtless true that when lands adjoining those which are conveyed are described in a deed as now or late of a third person, the descriptive clause is frequently repeated, without alteration, in successive conveyances, although from the lapse of time or change of circumstances, it has wholly lost its original meaning, and is no longer a true expression of the facts which it asserts; but we are persuaded that this only happens when the lands still remain in the occupation of strangers, or strangers are still believed to be the owners. We cannot believe that the owner of lands that in former deeds have been thus described, when he is himself a party to a conveyance of adjoining land, would permit the insertion of a clause, which he not only knows to be false, but which involves in its falsity a disclaimer and denial of his own title. Had there been no prior conveyance by Halsey of the land described as now or late of Wildes, we have seen that Hunt must necessarily have been the owner when he conveyed to Paulding, and had such been the fact it would be unreasonable to doubt that the land would have been described as his in the conveyance. It would have been designated as “ other land of said Hunt,” or “ of the party of the first part,” or by other words of equivalent import.
Were it possible for us, then, to concede that the words “ now or late of Gr. Wildes” are so vague and equivocal that they ought not to have been understood by the plaintiffs as conveying any affirmation of the actual or recent ownership of Wildes, they certainly implied, and must have been understood by the plaintiffs as implying, that no title was then vested in Hunt, and the notice thus given to them that Hunt was not then the .owner, was equivalent to notice of a prior conveyance by the mortgagor, since they knew that all the lands which the mortgage covered, had no portion of them been previously con *577 veyed by Halsey, must have passed to Hunt by virtue of tbe general assignment. They could not have released to him without knowing that he was tbe owner of tbe equity of redemption in tbe lands released, and they must therefore have known by what title be became so.
Hitherto we have made no mention of tbe map which is annexed to the deed to Paulding, and upon which the learned counsel for tbe defendants laid a good deal of force in bis argument. We have not done so for two reasons: we have considerable doubts whether tbe map can be properly regarded as embraced by tbe reference that is made in tbe release, so as to charge tbe plaintiffs with a knowledge of its existence and contents, and we have no doubt that without the introduction of the map, the proof of notice is sufficient.
It is, indeed, very possible, and it may even be admitted, as very probable, that neither the release, nor the deed to Paulding, were read, or even slightly inspected by the officers of the company when the release was executed; but it is needless to cite authorities to show that in all cases it is a presumption of law that the contents of a deed were known to tbe parties before its execution, and that except in’ cases of actual fraud, this presumption precludes them, when the rights of a third person are concerned, from averring their ignorance. We must, therefore, decide tbe case now, precisely as we must have done, bad there been positive evidence that the clauses in the release and in the deed, upon which the allegation of notice is founded, were carefully read by tbe officers of tbe company' before or at the time of tbe execution of the release. Reasoning then, as we are bound to do, upon this presumption of law as a fact, tbe conclusion, it seems to us, is necessary and irresistible, that tbe information thus given to the plaintiffs, if not positive in its nature, yet rendered tbe fact of a conveyance by the mortgagor prior to his assignment to Hunt of tbe land not embraced in tbe release, so probable, that a further inquiry, for tbe purpose of ascertaining the fact, became their immediate and imperative duty ; and the rule of law that must govern our decision, is as inflexible as it is just, that he who is bound to inquire before *578 he performs an act by which he has reason to believe that the rights of others may be affected, is chargeable with a knowledge of all the facts that an inquiry, properly made, would have disclosed to him. If his actual knowledge would have rendered his act, as affecting the rights or equities of others, illegal and void, such is also the necessary effect of the knowledge which, when he omits to inquire, the law imputes to him. (Green v. Stryker, 4 John. Ch. R. 47; Pendleton v. Fay, 2 Paige, 204; Sigourney v. Mason, 7 Cow. 313; Fraser v. Weston, 1 Barb. Ch. R. 220, 232; Kennedy v. Green, 3 Mylne & Keen, 99.)
Although the internal evidence of the transaction between the officers of the company and Hunt, if we chose to dwell upon it, might not improbably lead us to the conclusion, that the parties, in making the agreement which was consummated by the release, acted, not at all in ignorance of the facts, but only under a mistake, a serious though very common mistake as to the law, yet we are not prepared to say that there is sufficient proof of the actual knowledge of the plaintiffs to justify us in making it a ground of our decision; but of that knowledge which the law imputes to those who are bound, yet omit to inquire, the proof is, in our judgment, ample and conclusive.
A decree must therefore be entered, declaring in substance, that as the plaintiffs, when they released to Hunt a portion of the mortgaged premises exceeding in value the whole amount of the mortgage debt, had notice that the lands not embraced in the release, and which they seek by their bill to charge with the payment of the sum remaining due upon the mortgage, had been conveyed by the mortgagor before those which they released, the lands not released are wholly exonerated from the lien of the mortgage, which, in respect to them, must be held to be satisfied. Consequently the bill, as against the defendants now before us, must be dismissed with costs.